UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NELSON GOMES, MICHAEL LUCKHOO-BOUCHE, SHANE SCHMIDT, DOUGLAS ROE, KELLY WARAWA, FFS CAPITAL LIMITED, PAIFANG TRADING LIMITED, ARTEFACTOR LIMITED, ATLANTEAN MANAGEMENT CORPORATION, MEADOW ASIA LIMITED, and THYME INTERNATIONAL LIMITED,<br><br>Defendants. | Civil Action No.<br>20-11092-FDS |

### MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR CIVIL PENALTIES AGAINST DOUGLAS ROE AND ATLANTEAN MANAGEMENT CORPORATION

**SAYLOR, C.J.**

This case involves a "pump-and-dump" scheme to defraud investors through the sale of unregistered stock. The Court previously entered partial judgments against defendants Douglas Roe and Atlantean Management Corporation. The judgments left unresolved whether the Court should impose civil penalties upon Roe and Atlantean, and, if so, in what amount. Plaintiff Securities and Exchange Commission now moves for entry of final judgments against Roe and Atlantean incorporating the terms of the prior judgments and imposing civil penalties in the amount of $300,000 against each defendant.

For the following reasons, the motion will be granted in part.

I.      **Background**

     A.      **Factual Background**

Douglas Roe is a Canadian citizen and a resident of Vancouver, British Columbia. (Compl. ¶ 16). Roe was charged by the Commission in connection with a penny-stock scheme in May 2017 and settled those charges in August 2018. The settlement resolution included a civil penalty of $50,000 and a penny-stock bar. *S.E.C. v. Roe et al.*, No. 17-cv-01293 (D. Md. 2017).

Atlantean Management Corporation is a Canadian company incorporated in November 2017. (Compl. ¶ 20). The company is 100% beneficially owned by Roe, and he is the president and only director.

Between January 2018 and April 2020, Roe and Atlantean engaged in a scheme whereby corporate control persons illegally sold stock of Sandy Steele Unlimited Inc. on the open market without making the required disclosures. (Compl. ¶ 1). In conjunction with the sales, promoters coordinated fraudulent campaigns—including false claims about Sandy Steele's ability to produce facemasks during the early phases of the COVID-19 pandemic—to boost stock sales. (*Id.* ¶¶ 1, 3).

In January 2018, Atlantean was assigned the right to convert $3,000 of a fraudulently-issued promissory note into shares of Sandy Steele stock. (Compl. ¶ 40). Atlantean converted its note into 3,000,000 unrestricted shares in July 2019. (*Id.* ¶¶ 42-48). Atlantean (via Roe and another associate) then transferred its shares to FFS Capital Limited, a Hong Kong company beneficially owned and directed by Nelson Gomes. (Compl. ¶ 48-49; Donelan Suppl. Decl. ¶ 9). After the fraudulent promotional campaigns dramatically increased trading in Sandy Steele stock, Gomes sold Atlantean shares (along with other shares), generating profits of at least $1.8 million overall. (Compl. ¶¶ 60-61; Donelan Suppl. Decl. ¶ 9). Gomes then caused FFS Capital

to remit $514,502 of those proceeds to Atlantean.  (Compl. ¶ 62; Donelan Suppl. Decl. ¶ 10). Around the same time, Roe wired CAD $20,887.50 to an entity controlled by defendant Shane Schmidt.  (Donelan Suppl. Decl. ¶ 11).  FFS Capital wired another $33,933 of proceeds from trading in Sandy Steele stock to an entity controlled by Roe through his wife.  (Donelan Suppl. Decl. ¶ 12).

The complaint alleges that Roe "knew, or was reckless in not knowing" that he was prohibited from selling controlled shares publicly without complying with stock registration requirements or sale restrictions.  (Compl. ¶ 67).  It further alleges that Roe "knew, or [was] reckless in not knowing" that he was, along with other defendants, "dumping Sandy Steele shares to unsuspecting investors" in coordination with a false and misleading promotional campaign.  (Compl. ¶ 70).

The price of Sandy Steele stock dropped significantly after the promotions ceased.  (Compl. ¶ 63).  The SEC suspended trading in Sandy Steele on April 6, 2020.  (Compl. ¶ 4).  By June 2020, Sandy Steele's market capitalization was $134,618.  (Donelan Decl. ¶ 64).

**B.     Procedural Background**

The Commission filed suit in June 2020 against Roe, Atlantean, and nine other defendants who collectively held and sold shares of Sandy Steele.  The complaint charged Roe and Atlantean with violating the antifraud provisions of Sections 17(a)(1) and (3) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77q(a)(1), (3); Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rules 10b-5(a) and (c) promulgated thereunder, 17 C.F.R. §§ 240.10b-5(a), (c); and the securities registration provisions of Sections 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e(a), (c).  (Compl. Counts 1, 2, 4).

The Court entered partial judgment by consent against Roe on March 30, 2022, enjoining him from future securities violations and ordering him to pay $548,435 in disgorgement of profits and $32,971 in prejudgment interest. (Dkt. No. 106). On the same day, the Court entered partial judgment by consent against Atlantean, enjoining it from future securities violations, imposing a five-year penny-stock bar, and ordering it to pay $514,502 in disgorgement and $31,472 in prejudgment interest jointly and severally with Roe. (Dkt. No. 107).[1] The partial judgments left open the issue of whether civil penalties should be imposed and, if so, in what amount. In the event that the Commission filed a motion for penalties, it agreed in each case "that it [would] not seek a civil penalty from Defendant in excess of $300,000." (Dkt. No. 106 at ¶ V; Dkt. No. 107 at ¶ VI).

The judgments also provided that for the purposes of the Commission's motion for civil penalties, (1) Roe and Atlantean "will be precluded from arguing that [they] did not violate the federal securities laws as alleged in the Complaint;" (2) Roe and Atlantean may not challenge the validity of the consents or the partial judgments; (3) "the allegations of the Complaint shall be accepted as and deemed true by the Court;" and (4) the Court may consider evidence "without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure." *Id.*

The Commission has now moved for civil penalties pursuant to Section 20(d)(1) of the Securities Act, 15 U.S.C. § 77t(d)(1), and Section 21(d)(3)(A) of the Exchange Act, 15 U.S.C. § 78u(d)(3)(A).

---

[1] The $548,435 sum imposed on Roe reflects the $514,502 in proceeds Atlantean received plus an additional $33,933 an entity controlled by his wife received from Gomes and FFS Capital. (Def. Opp'n at 10; Donelan Suppl. Decl. ¶¶ 10, 12). Roe alone is responsible for the $33,933 sum.

4

## II.     Legal Standard

Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act authorize the assessment of civil penalties against those who violate federal securities laws. 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3). The statutes "authorize the Court to determine the amount of the penalty 'in light of the facts and circumstances.'" *S.E.C. v. Esposito*, 260 F. Supp. 3d 79, 92 (D. Mass. 2017) (quoting 15 U.S.C. §§ 78u(d)(3)(B)(i), 77t(d)(2)(A)). Both statutes set out three tiers of penalties addressing violations of increasing severity. "Tier I penalties are generally applicable, Tier II penalties require fraud, deceit, manipulation, or a deliberate or reckless disregard of a regulatory requirement, and Tier III penalties require the Tier II elements plus substantial losses or . . . significant risk of substantial losses to other persons." *S.E.C. v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005) (internal citations and quotation marks omitted). "In determining the appropriate fine, courts have considered factors including the egregiousness of the violation, the defendant's willingness or failure to admit wrongdoing, the isolated or repeated nature of the violations, the degree of scienter involved, the defendant's cooperation or lack thereof with authorities, and the defendant's current financial condition." *Esposito*, 260 F. Supp. 3d at 93.

A civil penalty may not exceed the larger of (1) a defendant's gross pecuniary gain or (2) the maximum amount fixed by regulation. *See* 15 U.S.C. §§ 77t(d)(2); 78u(d)(3)(B). According to the SEC, for Roe, the maximum first-tier penalty is $10,360 per violation, the maximum second-tier penalty is $103,591 per violation, and the maximum third-pier penalty is $207,183 per violation. (Plaintiff's Mem. at 11-12 (citing 17 C.F.R. § 201.1001(b)). For Atlantean, the maximum first-tier penalty is $103,591 per violation, the maximum second-tier penalty is $517,955 per violation, and the maximum third-tier penalty is $1,035,909 per violation. *Id.*

### III.     Analysis

The SEC contends that defendants should each be assessed a third-tier penalty of $300,000 because their violations "facilitated a fraud that directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons who decided to buy the microcap securities dumped into the market by the Initial Sandy Steele Shareholders and the Gomes Group." (Plaintiff's Mem. at 13).

Defendants oppose the civil penalty assessment on the basis that it "effectively seeks a double recovery" given Roe's disgorgement of $548,435 plus interest on behalf of both defendants. (Defs. Opp'n at 1). Defendants also contend that Atlantean consented to joint and several liability with Roe and should not receive a separate penalty. And they assert that the proposed penalty is disproportionate to their role in the securities scheme. Instead, defendants request a civil penalty of $100,000 against Roe individually or divided between Roe and Atlantean. (*Id.* at 2).

Under the terms of the partial judgments previously entered, defendants are "precluded from arguing that [they] did not violate the federal securities laws" and "the allegations of the Complaint shall be accepted as and deemed true by the Court." (Dkt. No. 106 at ¶ V; Dkt. No. 107 at ¶ VI). The predicate requirement for the imposition of civil penalties—that a securities violation occurred—has therefore been established. 15 U.S.C. § 77t(d)(1); 15 U.S.C. § 78u(d)(3)(A).

A third-tier penalty is appropriate here because the evidence shows that defendants did in fact facilitate a fraud that at a minimum "created a significant risk of substantial losses to other persons." *See* 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). By participating in a scheme to artificially inflate the value of Sandy Steele stock, defendants ran the risk of harming innocent

investors who were misled by the fraudulent promotional campaign and whose share value plummeted when defendants and those they worked with cashed out. *See, e.g.*, *Esposito*, 260 F. Supp. 3d at 93 (third-tier penalty of $775,000 appropriate where defendant "caused investors to suffer substantial losses when the [] shares they had bought became worthless after the conversion of [] debt and the dumping of millions of [] shares into the public markets").

Applying the factors generally considered by courts in assessing civil penalties leads to the same conclusion. While Roe and Atlantean have consented to judgments admitting violations of the securities statutes, the securities violations were egregious, generating at least $1.8 million in proceeds at the expense of unsuspecting investors. Defendants' misconduct was prolonged, lasting for more than a year. And Roe was sanctioned $50,000 in 2018 for playing a similar role in another securities-fraud scheme. Given defendants' history of involvement with other members of the Sandy Steele control group and Roe's prior involvement in SEC enforcement proceedings, defendants were at the very least reckless in not knowing that they were engaged in the illegal sale of unregistered stocks and the defrauding of investors.[2] Finally, neither defendant has submitted a statement of financial condition indicating that they lack assets to pay the penalty.

Comparing the Commission's proposed penalty to that imposed upon other participants in the scheme supports that result. Gomes received a civil penalty of $390,094 in addition to disgorgement of $1,153,058 in net profits plus prejudgment interest. (Dkt. No. 80 at ¶ VII). While defendants Roe and Atlantean participated in fewer transactions and received fewer financial benefits, they were nevertheless active and necessary participants in the Sandy Steele scheme and a comparable, if not quite equal, penalty is justified.

---

[2] Roe's scienter can be attributed to Atlantean, as Roe is the owner and sole director. *See Esposito*, 260 F. Supp. 3d at 91.

Defendants' contention that the partial judgments against Roe and Atlantean imposed a joint cap at $300,000 is inconsistent with the language of the agreements. Each judgment states: "The Commission agrees that it will not seek a civil penalty from Defendant in excess of $300,000." (Dkt. No. 106 at ¶ V; Dkt. No. 107 at ¶ VI). The use of the singular "defendant" makes clear that the $300,000 cap applies to each defendant individually, not jointly. Furthermore, civil penalties may not be ordered jointly and severally and should be assessed separately. *See S.E.C. v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 287-88 (2d Cir. 2013); *S.E.C. v. DFRF Enterprises LLC*, 384 F. Supp. 3d 129, 130 n.1 (D. Mass 2019).

Finally, defendants' argument that Atlantean should not be subject to a separate penalty because Roe has disgorged all profits received by Atlantean overlooks the fact that disgorgement and civil penalties serve entirely different purposes. While "[d]isgorgement is an equitable remedy designed to benefit investor victims," *S.E.C. v. Knox*, 2022 WL 1912877, at *3 (D. Mass. June 3, 2022), "[t]he imposition of civil penalties is intended to 'penalize the defendant for illegal conduct' and deter future securities violations," *S.E.C. v. Weed*, 315 F. Supp. 3d 667, 677 (D. Mass. 2018) (internal alterations omitted) (quoting *S.E.C. v. Sargent*, 329 F.3d 34, 41 (1st Cir. 2003)). While the purpose of disgorgement may be satisfied by either Atlantean or Roe forfeiting the profits illegally obtained, deterrence of future violations—by the defendants or other actors—is best achieved by imposing a penalty upon both.

There remains the question of the amount of the penalty. The SEC does not indicate how it arrived at the proposed penalty of $300,000 for Roe, which exceeds the $207,183 Tier 3 maximum for each violation by a natural person set by the regulation.[3] Although the proposed amount as to Roe does not exceed the total pecuniary gain he received ($548,435), the SEC seeks

---

[3] Atlantean's penalty does not exceed the Tier 3 maximum for "other persons" ($1,035,909).

a $300,000 penalty against both Roe and Atlantean, which as a practical matter would result in a $600,000 total penalty on a $548,435 total gain.  Although perhaps not required by law, under the circumstances, the Court will impose a penalty as to Roe in the amount of $248,435, which it finds to be reasonable and appropriate.

## IV.     Conclusion

For the foregoing reasons, the motion of plaintiff Securities and Exchange Commission is GRANTED in part.  Final judgments will be entered against Douglas Roe and Atlantean Management Corporation incorporating the terms of the prior judgments and imposing civil penalties in the amount of $248,435 against Roe and $300,000 against Atlantean.

**So Ordered.**

Dated:  October 20, 2022

/s/  *F. Dennis Saylor IV*
F. Dennis Saylor IV
Chief Judge, United States District Court